Filed 11/17/23  P. v. Sims CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B323570 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA179907) |
| v. | |
| JERMAINE LEE SIMS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant Jermaine Sims filed a petition to vacate his sentence and for resentencing of his first degree murder conviction pursuant to former Penal Code section 1170.95.[1]  The trial court judge, who had presided over defendant's trial, denied the petition, ruling that defendant was ineligible for resentencing because he was properly convicted as an aider and abettor and because he was a major participant in the underlying robbery and acted with reckless indifference to human life.  Defendant appeals, challenging only the court's reckless indifference finding. We affirm.

# II.    BACKGROUND

The following background is taken from our prior unpublished opinion concerning defendant's section 1172.6 petition (*People v. Sims* (Mar. 22, 2021, B300244 [nonpub. opn.] (*Sims I*)) which recited the facts from the unpublished opinion in the direct appeal from defendant's underlying conviction (*People v. Turner* (Dec. 16, 2002, B152074, B157289 [nonpub. opn.])[2]:

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.  Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)  Further references will be to the statute's current section number only.

[2]    Neither party contends the facts as recited in the prior appellate opinions do not accurately reflect the facts in the trial record in this matter.  At the outset of the trial court's evidentiary hearing on defendant's section 1172.6 petition, the

2

"A.    *Robbery/Murder*[]

'The Nguyen family owned Wit's Liquor Store in Lawndale. During the afternoon of December 25, 1998, [S.] Nguyen was working at the cash register, while her father, Alan Nguyen, napped on a pillow and blanket set up behind the counter.

'At 2:30 p.m., defendant . . . entered the store, [purchased] a can of soda . . . , and left the store.  A few minutes later, defendant . . . re-entered the store accompanied by [codefendant Moses Lee Turner].  Defendant . . . held a gun to [Ms.] Nguyen's head and demanded money from the cash register. Simultaneously, . . . Turner circled to the back of the counter where [Mr.] Nguyen slept, picked up the still-sleeping man, and violently beat him on the head with his fists and the butt of a handgun.  At one point, . . . Turner smashed [Mr.] Nguyen's head against a shelf of bottles.  While watching the assault on her father, [Ms.] Nguyen attempted to comply with defendant['s] demand to empty the cash register's contents into a paper bag. Defendant . . . set his soda on the counter, grabbed the bag from [Ms.] Nguyen and put in more money from the register, as well as

---

parties, citing section 1172.6, subdivision (d)(3), and the court agreed that the court could not rely on the factual summary of defendant's offenses contained in the nonpublished opinion in *People v. Turner, supra*, B152074, B157289.  Nevertheless, the parties and the court agreed that the opinion's factual characterizations were accurate although defense counsel believed there were "more details in the record of the transcripts than what's in the appellate decision or really what was necessary to be in the appellate decision . . . ."  Accordingly, we set forth facts from the prior opinion as context for defendant's claims.

some credit card receipts.  Defendant . . . ordered [Ms.] Nguyen to lie on the floor, which she did.  Defendants then left the store, leaving behind both the paper bag full of money ($200) and credit card receipts, and defendant['s] . . .  soda.  A surveillance camera had captured the entry of both defendants into the store and defendant['s] robbery of [Ms.] Nguyen, although the quality of the videotape was not clear.

'[Mr.] Nguyen died at the scene from severe brain trauma. He had suffered multiple head injuries caused by "moderate to severe force."

'Defendant['s] fingerprints were found on several items inside the store, including the soda can and one of the credit card receipts in the paper bag.  In argument to the jury, defendant['s] . . . attorney conceded defendant['s] presence in the store and robbery at gunpoint of [Ms.] Nguyen.'

"B.    *Underlying Conviction*

"On May 18, 2001, a jury found defendant guilty of:  first degree murder in violation of section 187, subdivision (a) (count 1); and two counts of second degree robbery in violation of section 211 (counts 2 and 3).  The jury also found true, as to all three counts, the allegations that defendant personally used a firearm in the commission of the offenses within the meaning of section 12022.53, subdivision (b) and that a principal was armed with a firearm in the commission of the offenses in violation of section 12022, subdivision (a)(1).

"On March 13, 2002, the trial court sentenced defendant to a term of 25 years to life on count 1, plus an additional consecutive 10-year term pursuant to section 12022.53,

4

subdivision (b), for an aggregate base term of 35 years to life. The court also imposed, but stayed, a 15-year sentence on count 2 and imposed a concurrent 15-year sentence on count 3.

"On December 16, 2002, a panel of this Division affirmed defendant's conviction. (*People v. Turner,* [*supra,* B152074, B157289].)

"C.    *Petition for Resentencing*

"Defendant filed his initial petition for resentencing under section [1172.6] on December 17, 2018. Without defendant being present or represented by counsel, the court denied the motion, concluding that '[t]he new legislation restricts accomplice liability for felony murders to those who harbor a specific intent to kill and therewith aid, abet, counsel, command or assist the actual killer, along with those who were "major participants in the underlying felony" who act with "reckless indifference" to human life. Petitioner does not claim to fall outside of these criteria [nor] does he otherwise recite any facts to demonstrate his entitlement to relief under the new law. His request for a modification of sentence is therefore denied.'

"On March 7, 2019, defendant filed a supplemental petition for appointment of counsel and resentencing under section [1172.6], arguing that he was entitled to resentencing on his first degree murder conviction because neither the trial court nor the jury found that he acted with reckless indifference to human life or that he was a major participant in the robbery.

"On March 14, 2019, the trial court again summarily denied the petition, reasoning that defendant was a major

5

participant who acted with an intent to commit a crime that carried "'a grave risk of death.'"" (*Sims I, supra*, B300244.)

Defendant appealed from the summary denial of his petition and we reversed and remanded. We held that, based on the record, "the trial court could not determine at the initial stage of the process—as a matter of law and without resort to factfinding—that the jury did not base its first degree murder finding on a felony murder theory without proof of malice." (*Sims I, supra*, B300244.)

The following background is from the trial court proceedings following remand:

The trial court issued an order to show cause why defendant's petition should not be granted.[3] The court held an evidentiary hearing at which the prosecution introduced into evidence all the transcripts from the underlying criminal conviction, including the transcript from defendant's sentencing hearing at which defendant said, "'I just wanted to state I'm sorry to the Nguyen family, and I did not kill Mr. Nguyen. And just make it clear to you that we have eternal life. It's going to be judgment day for everybody, and I don't feel I should be punished for that. I feel I should be punished for what I've done. And it's clear, you know, if I knew he was going to kill that man, I would

---

[3]     The record on appeal contains a copy defendant's December 17, 2018, section 1172.6 petition but not his March 7, 2019, petition. The trial court's order denying defendant section 1172.6 relief indicates that it concerns defendant's March 7, 2019, petition. On our own motion, we take judicial notice of the copy of the March 7, 2019, petition contained in the record in *Sims I*. (Evid. Code, §§ 452, subd. (d) & 459, subd. (a).)

have just killed her. I had no intention or idea that he was back there asleep.'"

At the sentencing hearing, the trial court observed, "'[Defendant] said something, of course, that has piqued my curiosity here. And that is had he known his confederate, Mr. Turner, was going to kill Mr. Nguyen, he would have killed her. And I presume that he was referring to Ms. Nguyen.'"

Trial defense counsel responded to the court, "'I understand. That's not what he meant. He didn't express himself properly. He's discussed this with me at least five times. I know—I know the way he thinks, and that's what he thinks.'" The trial prosecutor responded, "'For what it's worth, I took it the same way [defense counsel] said. In other words, look, if I went in there to kill somebody, if that was the plan, then he was killing Ms. [*sic*.] Nguyen, I would have been killing her. And therefore you can see, because I didn't kill her, that wasn't my intent. So I understand it the same way.'"

During the evidentiary hearing, the prosecution also pointed out testimony from the trial that Ms. Nguyen was five feet tall and weighed 100 pounds and Mr. Nguyen was five feet three inches tall and of small build.

After the evidentiary hearing, the trial court denied defendant's petition, finding beyond a reasonable doubt that defendant was properly convicted as an aider and abettor and "was a major participant in the underlying felony offense of robbery, and acted with a reckless disregard for human life." The court explained:

"[T]he evidence clearly established it was not [defendant] but instead Turner who actually killed Mr. Nguyen. [Defendant's] conviction for murder was therefore premised on

7

aiding and abetting, felony murder, or on both theories. Under then-existing law, aiding and abetting was a viable theory of culpability and continues to be under . . . § 189, subd. (e)(2). The issue presented therefore concerns the applicability of felony murder as a basis upon which to premise [defendant's] criminal liability for murder in view of recent legislative changes to penal statutes that govern its use.

"On June 24, 2022, the court conducted an evidentiary hearing as provided by . . . § [1172.6]. By stipulation of the parties, the record of conviction as noted includes, among other things, the information, jury instructions, trial exhibits received into evidence at the hearing, trial transcripts, and the appellate decision. For reasons that will be discussed, the court will deny the petition not only because [defendant's] guilt was premised on aiding and abetting, which remains a viable theory of culpability following recent changes to . . . §§ 188 and 189, but also because the record of conviction supports his conviction for murder beyond a reasonable doubt on the basis of the current iteration of the felony murder [*sic*].

"[¶] . . . [¶]

"It is not clear to what extent [defendant] participated in the actual planning of the underlying robbery, or whether he was the supplier of the guns he and his cohort used. However, many of the other factors articulated in [*People v.* ]*Banks* [(2015) 61 Cal.4th 788 (*Banks*)] establish beyond a reasonable doubt that he was a major participant in the underlying robbery. For example, [defendant] was not, as he claims in his response, some uninformed confederate waiting in isolation a considerable distance away from the crime scene. He instead was continuously present and actively involved in the underlying

8

crime from start to finish. He casually posed as a customer at the outset in order to case the liquor store, leaving the store and returning only moments later with his crime partner to commit the robbery. His initial reconnaissance was undoubtedly designed to guarantee no customers or other potential witnesses would be present. Further, [defendant] was aware of the actual dangers inherent in entering the store armed with a gun along with an accomplice he knew was also armed. He held his gun at Ms. Nguyen's head to prevent her from seeking help or otherwise interfer[ing] with the crime plan, and ultimately by this means also prevented her from assisting her elderly father during the fatal assault. [Defendant] was positioned within a few feet away to witness all of this and was aware of the grave risk of death these circumstances presented. He nonetheless made no attempt to restrain his crime partner from beating Mr. Nguyen to death even though neither victim offered any resistance. [Defendant] opted instead to turn a blind eye to his cohort's violence, viewing it an acceptable means to consummate the robbery.[4] In addition, as he thereafter left the scene, [defendant] made no effort to assist Mr. Nguyen, who laid on the floor bloodied and dying. Thus, even if he actually intended neither the beating nor the homicide that resulted, [defendant] knowingly continued to participate in the crime without objection or hesitation, and in doing so realized this presented an ever-increasing, grave risk of death. [Citation.]

---

"[4]     That [defendant] possessed no objection to killing as a means of furthering his criminal objectives is arguably further demonstrated by his comment at sentencing that he would have considered killing Ms. Nguyen had he known Mr. Nguyen would succumb to his injuries.

"For each of the foregoing reasons, the prosecution has also proved beyond a reasonable doubt [defendant] acted with a reckless disregard for human life. In brief, these reasons include [defendant's] awareness about the guns and intended robbery; his presence at the murder scene, from beginning to end; the fact he could see his cohort was not peaceable or cautious, yet he failed to take any steps before, during or after the robbery to minimize risk (e.g. ensuring the guns were unloaded, suggesting Turner behave in such a way as to reduce risks, or demonstrate even a passing regard for his victims, such as taking care not to point his gun recklessly at Ms. Nguyen's head or by presenting aid or comfort to Mr. Nguyen after he had been severely injured). [Citations.]

"Consequently, on the basis of the record, the court finds beyond a reasonable doubt as follows: (1) [defendant] was properly convicted as an aider and abettor to the murder of Mr. Nguyen in that he provided comfort, support, and assistance to his accomplice, the actual killer, with the intent of facilitating the commission of murder in the first degree; (2) in addition, [defendant] was a major participant in the underlying felony offense of robbery, and acted with a reckless disregard for human life. . . ."

## III. DISCUSSION

Defendant contends that insufficient evidence supports the trial court's finding that the prosecution proved beyond a doubt that he acted with reckless disregard for human life in the robbery. We disagree.

10

A.    *Standard of Review*

"We review the trial court's factual findings for substantial evidence.  [Citations.]  '[W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence.'  [Citation.]  '"We resolve neither credibility issues nor evidentiary conflicts . . . ." [Citation.]'  [Citation.]"  (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

B.    *Senate Bill No. 1437 (Senate Bill 1437)*

"Senate Bill 1437 was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  (Stats. 2018, ch. 1015, § 1, subd. (f).)  Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability.  Senate Bill 1437 also adds . . . section [1172.6], which allows those 'convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . .'  (§ [1172.6], subd. (a).)

11

"An offender may file a petition under section [1172.6] where all three of the following conditions are met:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;]  [¶]  [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection[s] 188 or 189 made effective January 1, 2019.'  (§ [1172.6], subd. (a)(1)–(3).)"  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

C.      *Reckless Indifference to Human Life*

"'[T]he culpable mental state of "reckless indifference to life" is one in which the defendant "knowingly engag[es] in criminal activities known to carry a grave risk of death" [citation] . . . .'  (*People v. Estrada* (1995) 11 Cal.4th 568, 577.)  'The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.'  (*Banks, supra*, 61 Cal.4th at p. 801.)  '[I]t encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'  ([*People v. ]Clark* [(2016)] 63 Cal.4th [522,] 617 [(*Clark*)].)"  (*In re Loza* (2017) 10 Cal.App.5th 38, 51–52.)

Among the relevant factors to consider in determining whether a defendant acted with reckless indifference to human life are: (1) knowledge of weapons, and use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony; (4) the defendant's knowledge of a cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of the violence during the felony. (*Clark, supra*, 63 Cal.4th at pp. 618–623.) No one of the factors for determining reckless indifference "'is necessary, nor is any one of them necessarily sufficient.' [Citation.]" (*Id.* at p. 618.)

1.     Knowledge of weapons, and use and number of weapons

Defendant was armed with a gun. The jury found that defendant personally used a gun—at a minimum, he pointed the gun at Ms. Nguyen's head. Defendant's cohort Turner also was armed with and used a gun, beating Mr. Nguyen to death with it. Based on how the robbery transpired, it is reasonable to infer that defendant knew that Turner was armed with a gun. This factor therefore supports the trial court's finding of reckless indifference to human life.

2.     Physical presence at the crime and opportunities to restrain the crime and/or aid the victim

Presence is important to culpability because it allows a defendant to observe his cohorts' actions and demeanor and determine whether their behavior tends to suggest a willingness

13

to use lethal force. (*Clark, supra*, 63 Cal.4th at p. 619.) Presence also provides a defendant opportunities to act as a restraining influence on his cohorts and to render aid to a wounded victim. (*Ibid.*)

Defendant entered and surveilled the liquor store prior to exiting and returning with his cohort Turner. Defendant therefore knew that Ms. Nguyen was of small build such that it would be easy to rob the store without the use of two guns. Moreover, as the trial court found, defendant "was continuously present and actively involved in the underlying crime from start to finish." Defendant was in close proximity to Turner as Turner beat Mr. Nguyen and was thus in a position to restrain Turner and/or aid Mr. Nguyen. Defendant did not try to restrain Turner or aid Mr. Nguyen. Instead, he pointed his gun at Ms. Nguyen's head thus preventing her from helping her father or from escaping in order to obtain other aid.

The evidence concerning defendant's physical presence and actions at the scene strongly weighs in favor of the trial court's finding of reckless indifference to human life.

### 3. Duration of the felony

"Where a victim is . . . restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Clark, supra*, 63 Cal.4th at p. 620.) Ms. Nguyen testified that the robbery and murder lasted about six minutes.[5]

---

[5] In her opening statement, the trial prosecutor stated that the incident lasted six minutes from the time defendant entered

14

The evidence of duration does not support the trial court's conclusion that defendant exhibited reckless indifference to human life.

### 4. Defendant's knowledge of cohorts' likelihood of killing

The prosecution did not present evidence that defendant's cohort Turner had a propensity for violence or that defendant was aware of such a propensity in advance of the offenses. The evidence concerning this factor neither increases nor decreases defendant's culpability.

### 5. Defendant's efforts to minimize the risks of the violence during the felony

There is no evidence that defendant took steps to minimize the risks of violence during the robbery. Rather, defendant stood in close proximity to his cohort Turner as Turner beat Mr. Nguyen to death and facilitated that beating by pointing his gun at Ms. Nguyen's head thus preventing her from coming to her father's aid. Accordingly, this factor supports the trial court's conclusion that defendant exhibited reckless indifference to human life.

Considering the totality of the circumstances from the evidence presented at defendant's trial (*Banks, supra,* 61 Cal.4th at pp. 801–802) and the factors identified in *Clark, supra,* 63 Cal.4th at pages 618 through 623, we conclude there was

---

the store until he and Turner departed. She stated Mr. Nguyen's beating lasted about one minute, 20 seconds.

sufficient evidence that defendant acted with reckless indifference to human life.

## IV.   DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

I concur:

MOOR, J.

The People v. Jermaine Lee Sims
B323570


BAKER, Acting P. J., Concurring



I do not join the majority opinion, but I do agree we should affirm the trial court's order.  The trial court denied section 1172.6 relief on two independently sufficient grounds: (1) because it found defendant and appellant Jermaine Sims (defendant) was a direct aider and abettor in the malice murder of Alan Nguyen, and (2) because defendant was a major participant in the crime who acted with reckless indifference to human life and, thus, could be found guilty of felony murder under current law.  Defendant's opening brief challenges only the second of these determinations.  The Attorney General's brief notes defendant does not argue the trial court's direct aiding and abetting finding was erroneous, and defendant's reply brief does not dispute this.  That means we have an uncontested finding that independently justifies the trial court's ruling.  And because we do, affirmance is obviously required.



BAKER, Acting P. J.